IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TINA MARIE WILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:13-cv-01250-STA-dkv |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Tina Marie Willard filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 14, 2011. On April 3, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on August 3, 1966, and was forty years old on her alleged disability onset date.[8] She has a high school education and two years of college and is able to

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[8] (R. 23, ECF No. 9-3.)

communicate in English.[9] She has past work experience as a cashier, line worker, and machine operator.[10] Plaintiff initially alleged an onset date of disability of January 1, 2007, but the date was subsequently amended to June 1, 2008.[11] Plaintiff alleges disability due to chronic bronchitis, carpal tunnel syndrome, pain of the elbows, knees, ankles, and back, and double vision.[12]

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2013; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome (right greater than left), chronic obstructive pulmonary disease ("COPD"), obesity, anxiety, and depression; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform medium work with no more than frequent handling or fingering, no exposure to concentrated fumes, gases, and poorly ventilated areas, simple routine tasks with only occasional contact with the public and occasional changes in the work environment, and an articulated production schedule so there is no need for independent goal-setting judgment; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a

---

[9] (*Id.*)

[10] (*Id.* at 22, 307.)

[11] (*Id.* at 12.)

[12] (*Id.* at 306.)

framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[13]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[14] The claimant bears the ultimate burden of establishing an entitlement to benefits.[15] The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[16]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

---

[13] (*Id.* at 14-24.)

[14] 42 U.S.C. § 423(d)(1).

[15] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[16] *Id.*

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[17]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[18] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there is a substantial number of jobs that exist in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred by failing to properly consider the opinion of the consultative psychological examiners, Dr. Dennis Wilson, a clinical psychologist, and Ms. Melissa Greer, a licensed senior psychological examiner, and by failing to resolve inconsistencies between their opinions and his decision; by failing to reconcile his decision with his findings regarding Plaintiff's upper extremity impairments and resulting limitations; by mischaracterizing the evidence regarding Plaintiff's credibility; by not giving proper consideration to Plaintiff's mental health treatment records and assessments; and by failing to consider Plaintiff's indigence and drawing negative inferences about her condition based on her lack of treatment.[19] Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight

---

[17] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[18] 20 C.F.R. § 404.1520(a).

[19] (Pl's Mot. J. Pld, pp. 1 – 2, ECF No. 11-1.)

than that from a source who has not performed an examination,[20] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[21] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[22] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[23]

In the present case, the ALJ properly explained the weight given to the opinions of Dr. Wilson and Ms. Greer, who were one-time examiners, and how he arrived at Plaintiff's mental residual functional capacity. Substantial evidence supports the ALJ's determinations.

The ALJ applied a psychiatric review technique ("PRT") to analyze Plaintiff's mental impairments and found that she had mild restriction in activities of daily living; moderate limitations in social functioning; moderate limitations in maintaining concentration, persistence, and pace ("CPP"); and no episodes of decompensation of extended duration. The ALJ incorporated these restrictions by limiting Plaintiff to simple routine tasks with only occasional contact with the public, only occasional changes in the work environment, and an articulated production schedule so that there is no need for independent goal-setting judgment.

---

[20] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[21] *Id.* § 404.1502, 404.1527(c)(2).

[22] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[23] 20 C.F.R. § 404.1527(c).

If a claimant has one or more mental impairments, the ALJ applies a PRT at the step two and three findings.[24] When, as here, the ALJ finds a claimant not disabled at step three, the ALJ is then required to evaluate the claimant's residual functional capacity.[25] The ALJ's PRT findings are not equivalent to the ALJ's residual functional capacity finding, but the ALJ considers the former in determining the latter.[26]

Dr. Wilson and Ms. Greer examined Plaintiff and opined, *inter alia*, that Plaintiff had a Global Assessment of Functioning ("GAF") score of fifty indicating "serious impairment in social, occupational, or school functioning."[27] Dr. Wilson and Ms. Greer also opined that Plaintiff was moderately impaired in her ability to understand and remember, and was moderately-to-severely impaired in sustaining attention and concentration, social interaction, and adaptation.[28] The ALJ found that Plaintiff was only moderately limited in social functioning and CPP and that Plaintiff was able to adjust to other work. Thus, the ALJ rejected the opinion to the extent that Dr. Wilson and Ms. Greer opined that Plaintiff had a GAF score of fifty and experienced moderate-to-severe limitations in mental functioning.[29]

---

[24] *See* 20 C.F.R. § 404.1520a.

[25] *See* 20 C.F.R. §§ 404.1520(e), 404.1520a(d)(3).

[26] *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *4.

[27] (R. 738.) The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 - 34 (Text Revision 4th ed. 2000) ("DSM IV").

[28] (R. 737-38.)

[29] *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-09 (6th Cir. 2006) (affirming an ALJ's implicit rejection of an examining psychiatrist's opinion when the ALJ did not adopt the limitations contained therein).

The ALJ's reasons for partially rejecting this opinion are supported by substantial evidence. For instance, Dr. Wilson's and Ms. Greer's examination notes did not support their opinion. Plaintiff arrived alone and on-time for the examination; was cooperative and fully oriented; had no difficulty remembering and comprehending oral and written instructions, could make financial decisions, and performed activities on her own initiative; was able to complete some memory and concentration tasks, and interpret proverbs; and had "good" concentration with average intellect.[30] An ALJ may discount medical opinions that are inconsistent with the medical source's own examination notes.[31]

Additionally, Dr. Wilson and Ms. Greer relied heavily on subjective complaints. Plaintiff reported that she had a variety of severe anxiety symptoms, including anxiety attacks when in public. However, during the exam Plaintiff had good affect with good range and "moderate to mild" anxiety. Dr. Wilson and Dr. Greer opined that Plaintiff would have moderate-to-severe limitations based, in part, on her anxiety, despite their relatively mild findings.[32] To the extent that the opinion relied on Plaintiff's subjective complaints that were unsupported by objective findings, the ALJ correctly rejected the opinion.[33]

The ALJ rejected the opinion regarding Plaintiff's GAF score because Plaintiff's reduced functioning was likely situational, rather than permanent. Moreover, GAF scores are inherently

---

[30] (R. 733-38.)

[31] *See, e.g., Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011); *Buxton*, 246 F.3d at 773 ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotations and citation omitted)).

[32] (R. 734- 737.)

[33] *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (affirming an ALJ's rejection of an opinion that was based on subjective complaints rather than objective findings).

8

subjective and not an objective measure of functioning. The Commissioner has declined to endorse the GAF and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings.[34] Thus, an ALJ is not required to consider a GAF score.[35]

The ALJ gave great weight to the opinion of non-examining psychologist Dr. Mason Currey.[36] Dr. Currey reviewed Plaintiff's file and opined that she had mild restrictions in activities of daily living and moderate difficulties with social functioning and CPP.[37] Dr. Currey further opined that Plaintiff could understand and remember simple instructions, maintain CPP for at least two hours, interact appropriately with others, and adapt to infrequent change.[38] The ALJ gave Plaintiff the benefit of the doubt and found that she could have only occasional exposure to the public and occasional changes in environment. This accommodated Plaintiff's depression and anxiety in light of her minimal mental health treatment and non-significant past findings.

---

[34] *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 716 (6th Cir. 2013); 65 Fed.Reg. 50,746, 50,764–65 (Aug. 21, 2000). The GAF scale is not found in the latest revision of the Diagnostic and Statistical Manual of Mental Disorders, the DSM-5. It has been replaced by a system called "WHODAS." *See* Gold, Liza H., "DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0)," J. Am. Acad. Psychiatry Law 42:2:173-181 (June 2014) available at http://www.jaapl.org/content/ 42/2/173.full.

[35] *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013).

[36] The Commissioner permits ALJs to give more weight to a non-examining source's opinion when it is better supported than an examining source's opinion. *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3.

[37] (R. 749.)

[38] (R. 755.)

Accordingly, the Court finds that the ALJ properly weighed the medical opinions and other evidence in the record to determine Plaintiff's mental residual functional capacity. Substantial evidence also supports the evaluation of Plaintiff's physical residual functional capacity.

John Woods, M.D., examined Plaintiff and found that she could occasionally lift during an eight hour workday without restriction, frequently lift up to ten pounds due to her carpal tunnel syndrome and COPD, and could stand, walk, and sit without restriction.[39] The ALJ rejected the limitation that Plaintiff could only lift up to ten pounds frequently. The ALJ instead gave great weight to the opinion of non-examining physician Michael Ryan who opined that Plaintiff could lift up to fifty pounds occasionally and twenty pounds frequently.[40]

The ALJ could properly reject Dr. Woods's opinion. Dr. Woods found that Plaintiff had 5/5 strength in all major muscle groups and no tenderness, redness, swelling, spasm, enlargement, or muscle wasting in any joint examined.[41] She had normal ability to grasp in both hands.[42] Dr. Woods stated that Plaintiff had an "abnormal" ability to lift ten pounds from a seated position due to pain in the wrists, but he did not explain how Plaintiff's ability to lift was abnormal.[43]

---

[39] (R. 693.)

[40] (R. 716.)

[41] (R. 690.)

[42] (*Id.*)

[43] (*Id.*)

The ALJ also rejected Dr. Woods' opinion as being internally inconsistent.[44] For instance, Dr. Woods included a limitation on lifting due to pain in the wrists, despite findings of normal grip and muscle strength with no joint deformity.[45] And, it was inconsistent for Dr. Woods to opine that Plaintiff could occasionally lift an unlimited amount during an eight hour workday but would be limited to lifting ten pounds for the remainder of the workday.[46]

The ALJ gave greater weight to Dr. Ryan's opinion because it was more consistent with other evidence in the record.[47] For example, Plaintiff reported to Dr. Wilson and Ms. Greer that she did housework, fed and played with her dogs, and cooked on a daily basis.[48] She had no problems doing laundry or housekeeping.[49] This evidence is consistent with Dr. Ryan's opinion.

Plaintiff contends that, because the ALJ found that her "bilateral carpal tunnel syndrome, right greater than left" was a severe impairment, the ALJ should have included greater limitations in the residual functional capacity finding for handling and fingering with the right hand. Although the ALJ's severe impairment finding was based on the diagnosis of Plaintiff's treating physician, Juan Aristorenas, a diagnosis alone says nothing about limitations.[50] Dr. Aristorenas included no limitations as a result of this diagnosis.

---

[44] *See Ledford v. Astrue*, 311 F. App'x 746, 754 (6th Cir. 2008) (noting that an ALJ may reject an opinion that is internally inconsistent).

[45] (*Id*.)

[46] (R. 693.)

[47] *See* 20 C.F.R. § 404.1527(c)(4) (allowing an ALJ to consider an opinion's consistency with other evidence when weighing it).

[48] (R. 735.)

[49] (*Id.*)

[50] (R. 390.) *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff argues that her COPD and obesity further limited her ability to lift. Dr. Ryan considered Plaintiff's breathing impairments and weight in his opinion but did not find these warranted greater limitations.[51] Plaintiff's continued use of tobacco undermines her allegations of disabling cardiopulmonary symptoms.[52]

The ALJ properly determined that Plaintiff could perform a reduced range of medium work, and Plaintiff has failed to show she is otherwise more limited.

Next, Plaintiff complains of the ALJ's credibility determination. The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[53] A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[54] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[55] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[56] However, the ALJ's credibility finding "must find support in the record."[57]

---

[51] (R. 722.)

[52] (R. 43.) *See Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

[53] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[54] *Id.*

[55] *Id.*

[56] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. In making his credibility determination, the ALJ considered Plaintiff's statements about her symptoms and the limitations they caused. Plaintiff testified, among other things, that her hands go numb after ten minutes, that she could not do a load of laundry or cook, and that she could not lift more than five pounds.[58] She also testified that she has panic attacks, could not be around other people, and could not concentrate.[59]

The ALJ found that these statements were not entirely credible because Plaintiff performed significant daily activities. Plaintiff did housework, fed and played with her dogs, and cooked on a daily basis.[60] She reported that she had no problems doing laundry or housekeeping.[61] This level of activity is inconsistent with her complaints of hand pain and numbness. It is well-established that an ALJ may discount a claimant's credibility when he "finds contradictions among the medical records, claimant's testimony, and other evidence."[62]

---

[57] *Id.*

[58] (R. 41 - 42, 45.)

[59] (R. 49 – 50.)

[60] (R. 735.)

[61] (*Id.*)

[62] *See Whitfield v. Comm'r of Soc. Sec.*, 2014 WL 1329362 at *9 (W.D. Mich. Mar. 28, 2014).

13

Additionally, Plaintiff used only over-the-counter medication for her physical symptoms.[63] The Sixth Circuit has noted that "use of only mild medications . . . undercuts complaints of disabling pain."[64] And, Plaintiff's treatment history did not show the intensity of mental impairments as alleged. The ALJ relied on treatment notes from Quinco Mental Health Center that showed that Plaintiff was non-compliant.[65]

Plaintiff argues that the ALJ improperly faulted her for noncompliance without considering her inability to afford treatment. The ALJ considered Plaintiff's noncompliance in light of her being "unmotivated" for treatment.[66] Plaintiff also points out that she did not own a vehicle and argues that this is a reasonable explanation for her lack of treatment. However, Plaintiff testified that she stopped treatment because she "split up" with her boyfriend.[67]

Also diminishing her credibility is the fact that Plaintiff made inconsistent statements about her limitations. Plaintiff stated in her application that she followed oral and written instructions well, which Dr. Wilson and Ms. Greer corroborated.[68] This is inconsistent with Plaintiff's reported difficulties in concentrating and undermined the credibility of such a report.[69]

---

[63] (R. 21.)

[64] *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

[65] (R. 757.) *See* 20 C.F.R. § 404.1529(c)(3)(v).

[66] (R. 21, 757.)

[67] (R. 51.)

[68] (R. 351, 735.)

[69] *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *6 (instructing ALJs to consider the consistence of a claimant's statements with other evidence in the record).

Plaintiff gave varying reports of why she quit work at her last job. At the hearing, Plaintiff testified that she stopped working because she could no longer handle the assigned job duties.[70] However, she told Dr. Wilson and Ms. Greer that she lost her job when she was arrested for possession of marijuana.[71] An ALJ may consider a claimant's past work history when assessing credibility.[72] The ALJ considered this factor, along with the other factors discussed above, in assessing Plaintiff's credibility. Accordingly, the Court finds no error in the ALJ's credibility determination.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[73] The Commissioner may carry this burden by applying the medical-vocational grids[74] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[75] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the

---

[70] (R. 39-40.)

[71] (R. 735.)

[72] *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *5.

[73] *Jones*, 336 F.3d at 474.

[74] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[75] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[76]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the grids, and therefore used the grids merely as a "framework" in determining whether Plaintiff could perform other work. The ALJ then relied on the testimony of a vocational expert in determining that there were a significant number of jobs in the national economy that Plaintiff could perform. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and is not disabled.[77]

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision is **Affirmed.**

**s/ S. Thomas Anderson**

S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 30, 2016.

---

[76] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

[77] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).